687 So.2d 978 (1997)
Mildred R. JAYE, Appellant,
v.
ROYAL SAXON, INC. and Small & Small, P.A., Appellees.
No. 95-1465.
District Court of Appeal of Florida, Fourth District.
February 19, 1997.
*979 Randy D. Ellison, West Palm Beach, for appellant.
Lisa S. Small and Michael Small of Small & Small, P.A., Palm Beach, for appellee Small & Small, P.A.

ON MOTION FOR REHEARING
STONE, Judge.
Appellee's motion for rehearing is denied. However, we withdraw our opinion of November 13, 1996, and substitute the following modified opinion:
We reverse a judgment entered in supplementary proceedings awarding Appellee-Small, Appellant Jaye's previous attorney, various claims for present and past due attorney's fees and costs. It was an abuse of discretion to grant a protective order precluding Mrs. Jaye from receiving copies of her trust account records, itemized cost statements, and backup materials from her former attorney, and to preclude Mrs. Jaye's introducing documentary evidence at trial. Additionally, the trial court exceeded its jurisdiction in awarding what amounted to a deficiency decree for a prior obligation in this supplementary proceeding for a charging lien on certain specific settlement proceeds.
Jaye owned a cooperative apartment in a building operated by Royal Saxon. Royal Saxon sued Jaye in 1979 for enforcement of co-op rules. Jaye hired Small to represent her. Royal Saxon had alleged that Jaye should be compelled to turn over a key and that she should be enjoined from certain conduct. In addition, Royal Saxon instituted an eviction proceeding against Jaye for assessments, which she paid under protest.
The key case and the eviction case were consolidated and tried in 1984. During a trial recess, Jaye signed a $20,000 promissory note to attorney Small to cover attorney's fees. The trial court entered a directed verdict in favor of Jaye and awarded $72,708.20 ($54,125 and interest of $18,563) in attorney's fees to her as the prevailing party for the eviction case and $45,732 in fees for the key case plus costs and expert witness fees. Royal Saxon initiated four separate appealstwo from the judgments on the merits in the key case and eviction case and two from the judgments awarding attorney's fees in each case. Jaye successfully defended all four appeals. Attorney Small was awarded attorney's fees in the trial court and on appeal in the eviction case, but was not awarded fees in the key case.
Thereafter, Jaye brought a malicious prosecution action against Royal Saxon. She signed a new retainer agreement with Small for the malicious prosecution case. This agreement provided for a minimum contingency fee of 40% through the trial of the case and 5% for appeals. Initially, the trial court entered a summary judgment for Royal Saxon in the malicious prosecution case, relying on a prior opinion of this court. Jaye appealed and this court affirmed. Jaye then petitioned to the supreme court and the summary judgment was reversed, the supreme court overturning the prior opinion of this court. Jaye v. Royal Saxon, Inc., 609 So.2d 20 (Fla.1992).
Upon remand, the malicious prosecution action was tried and Jaye was ultimately *980 awarded $56,000 for Royal Saxon's malicious prosecution of the eviction case, but no damages for the key case. Costs were taxed in the amount of $8,349 and the trial court determined that Jaye was entitled to attorney's fees. Royal Saxon appealed the judgment, but after negotiations all appellate issues were settled and Royal Saxon paid the $56,000 plus interest and costs. Royal Saxon also paid $10,000 toward Jaye's attorney's fees.
The $56,000 was deposited into a Great Western Bank escrow account pending resolution of Small's attorney's lien claim against it. Small filed a proposed disbursement plan providing that the full $56,000 be paid to him, and showing a remaining balance of $47,951 that he claims Jaye owes him over and above the $56,000. In total, Small sought an award of $118,911 in costs and fees, minus credits of sums received, $41,869.52, and minus the $56,000. Small claimed $38,642.27 for fees and costs for the malicious prosecution case including the appeals, $45,105.87 for fees and costs for the "key case" and the appeal related to it, $2,377 for a petition for writ of certiorari, $2,634 for the appeal from an attorney's fee judgment by one of the individual directors of the cooperative, costs of $123 in the eviction case, and $28,672.54 in interest on the Jaye promissory note. From this he deducted an earlier cost judgment of $8,349.72, the $10,000 payment which Royal Saxon had contributed towards attorney's fees in the malicious prosecution settlement, and $14,000 in fees which Jaye had already paid, leaving a total deficit of $47,951.21 beyond the $56,000 in escrow.
Jaye, through new counsel, requested attorney Small to produce documents, invoices, and bills regarding the extensive litigation over the last 14 years. Small objected to the request to produce claiming harassment and that Jaye had, through the years, been furnished copies "contemporaneously." On October 25, 1994, the court denied all of Jaye's objections and, treating the matter as a summary post-judgment proceeding, set a hearing. Jaye then sought a continuance, claiming that she had the right to assert affirmative defenses. The trial court denied the motion.
At a deposition held in February, 1995[1], Small asked for documents that had been subpoenaed. Jaye said she did not have them, that she had given them to her attorney, and her attorney indicated that he had not brought them. Small then terminated the deposition and thereafter the court entered an order precluding Jaye from offering any exhibits or documentary evidence at trial based upon her failure to supply the subpoenaed documents at the deposition, although the court made no specific finding of willful disobedience. Additionally, after a non-evidentiary hearing, the court entered an order sustaining Small's objection to Jaye's request for Small's trust accounting and financial backup documents and entered a protective order protecting Small from having to respond to any of the outstanding production requests. The court then allowed Jaye fifteen days within which to serve specific line-by-line objections to a proposed summary disbursement plan.
Jaye filed objections alleging, as to the malicious prosecution case, that the $10,000 which Small accepted in satisfaction of the prior award of attorney's fees was settled without her consent. She also asserted that this represented the full amount Small was supposed to be paid for the malicious prosecution representation. Jaye also objected to the $8,346 in costs on grounds that she had not been provided cost records. She objected to the fees and costs incurred in the prior actions because Small had waited too long to claim that she owed those fees and costs.
On the day before the final hearing, the court was advised by her doctor that Jaye still had the flu. Jaye's attorney requested a continuance. The next morning, Jaye's attorney indicated that although he had not located or spoken with Jaye or her doctor that morning, he had received a call from Jaye saying she was still ill. The court proceeded without Jaye. Small had an expert attorney's fee witness and claimed additional *981 attorney's fees of $33,662.50 for himself in the handling of these supplementary proceedings against Jaye.
The final judgment awarded Small $29,095.45; 50% of the corpus, which was 40% for the trial and 5% for each of the appeals for the malicious prosecution, including the appeals to the 4th DCA and supreme court; awarded $48,805 for Jaye's past due legal expenses for the other cases; awarded $34,662.50 for Small's legal fees in representing himself against Jaye in the supplementary proceedings; and awarded $661.00 in costs, for a total award of $113,224.00. The court also declined to accept jurisdiction over issues involving the promissory note.
Jaye asserts that Small has received nearly $200,000, including $171,365 in attorney's fees and costs from Royal Saxon, without any accounting. Small testified that it was his understanding that there would be an accounting for any overage owed by Jaye when his representation of Jaye was finally concluded.
Rule 1.280 of the Florida Rules of Civil Procedure allows discovery of any nonprivileged matter that is relevant to the subject matter of the action. Small's assertion that he had provided the material in bits and pieces to his client a decade earlier does not, alone, constitute good cause for a protective order. Further, Jaye was entitled to the requested complete discovery even if she had received some statements over the years; paperwork which she had no duty to retain, absent some reason for her to anticipate that she would have to fight with her own attorney to see copies of records relating to his representing her. Small was seeking payment for work, much of which was completed more than a decade earlier; it was his burden to produce documentation in support of his claim.
In Commonwealth Fed. Sav. & Loan v. Tubero, 569 So.2d 1271 (Fla.1990), the supreme court recognized that dismissal or default as a sanction against a non-complying party is so severe that it must be founded on an express written finding of willful or deliberate failure to obey a court order to comply with discovery.
The transcript of Jaye's deposition indicates that Jaye said that she had previously delivered copies of papers she had received from Small to the Florida Bar and that they, in turn, had just sent copies to Small a week earlier. When Small asked if she had kept copies, she said she gave them to her attorney. When Small asked if she would produce them she said, "I don't have them with me." This does not demonstrate, absent more, a willful failure to comply.
Jaye also raises the issue of the propriety of the award of fees and costs incurred in prior actions. Fees and charges incurred outside of a suit are not, absent special circumstances, covered by a charging lien. Cf. Nichols v. Kroelinger, 46 So.2d 722 (Fla.1950). Here, however, the retainer agreement for the malicious prosecution case did provide that Small would have a lien on any recovery for fees and costs incurred in other representation of Jaye. Therefore, the trial court could conclude that Jaye acquiesced in the court recognizing a lien to that extent on the total proceeds received in the malicious prosecution case. However, nothing in the retainer contract authorizes a court having jurisdiction over the malicious prosecution res to summarily enter a deficiency judgment for past obligations, particularly absent pleadings seeking such relief. Therefore, it was error to impose an award beyond the $56,000 being held in escrow, thereby giving Small an unauthorized deficiency judgment.
The trial court further erred in awarding fees of $33,662.50 for Small's representing himself in the supplementary proceedings. The retainer agreement for the malicious prosecution suit provided:
Fees and costs outstanding for more than 30 days shall bear interest at a rate of one and half percent per month. In the event that the client fails to make payment and collection procedures are instituted, the attorney shall be entitled to receive an award of a reasonable attorneys' fee incidental to the collection proceedings.
Nothing in this provision alerts the client that the obligation under this provision extends to claims against the client's share of *982 any recovery for Small's claims against her that are not related to the malicious prosecution case. In any event, to the extent that the contract is unclear, it should be construed against Small. As it was not raised in this appeal, we do not address any potential concern that some might raise as to the attorney's duty to the client to insure that the client is fully informed and that the client's consent is well-counseled.
It was also error to award an extra five percent contingent fee for the Florida Supreme Court proceedings. The contract provided:
An additional five (5%) percent of any gross recovery after notice of appeal is filed, or post-judgment relief or action is required for the recovery of the judgment. If both a notice of appeal is filed and postjudgment relief or action is required for recovery, five (5%) percent for each shall be charged.
There is no provision for awarding another 5% for the appeal to the supreme court. Since the contract itself distinguishes between appeals and post-judgment relief, it can hardly be said that the latter includes the former.
Therefore, the award is reversed and we remand for further proceedings.
SHAHOOD, J., and RAMIREZ, JUAN, Jr., Associate Judge, concur.
NOTES
[1] An earlier scheduled deposition was continued because she had the flu (attached to the motion was a copy of a doctor's note).