789 So.2d 380 (2001)
Leonard ARABIA, Appellant,
v.
Robert J. SIEDLECKI, Cynthia H. Siedlecki, Robert M. Siedlecki, Heidi I. Siedlecki, American National Corporation, a Florida corporation, Biscayne Insurance Company, Inc., a Florida corporation, Transportation Industry Association, Inc., a Florida corporation, and Florida Specialty Underwriters, Inc., a Florida corporation, and Charging Lien Claimant/Lavalle, Brown, Ronan & Soff, P.A., Appellees.
No. 4D99-185.
District Court of Appeal of Florida, Fourth District.
March 28, 2001.
Rehearing Denied July 13, 2001.
*381 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Sidney A. Stubbs, Jr. of Jones, Foster, Johnson & Stubbs, P.A., West Palm Beach, for appellant.
*382 Mindy L. Pallott and Mark F. Raymond of Tew, Cardenas, Rebak, Kellogg, Lehman, DeMaria & Tague, L.L.P., Miami, for Appellee-Charging Lien Claimant/Lavalle, Brown, Ronan & Soff, P.A.

EN BANC

ON MOTION FOR REHEARING
WARNER, C.J.
Appellant's motion for rehearing is granted. We withdraw our previously issued opinion and substitute the following in its place.
This case arises from a dispute over attorney's fees. The trial court awarded a $1,000,000 fee to the law firm that represented the appellant Leonard Arabia on a contingent fee basis in the trial court proceedings, which resulted in a judgment in appellant's favor. Appellant claims that the award is in error because the court (1) failed to limit the award to the maximum contract amount; (2) failed to reduce the award by the amount of reasonable appellate fees incurred by the client in defending the judgment on appeal where the contract provided that the lawyer would represent appellant in "court proceedings;" and (3) miscalculated the interest due on the attorney's fees because of a previous tender of a portion of those fees. We agree and reverse on all three issues raised.
Arabia was involved in a business dispute with several companies and individuals. Stuart Soff, an attorney, agreed to represent Arabia in the suit on a partial contingency fee arrangement. Arabia provided Soff with a retainer of $10,000, with the remainder of the fee to be based upon Arabia's recovery in the suit. The contingency fee contract between Arabia and Soff provided that Soff would be paid 25% "of whatever is recovered, either in settlement or court proceedings." Soff later joined the Lavalle Brown firm, the appellees in this case.
After proceeding to trial in the action, a jury awarded Arabia $2,048,000 in damages. However, the trial judge reduced the damages to approximately $1,570,752. The defendants in the underlying original action appealed, and Arabia cross-appealed to challenge the reduction of damages. Arabia retained Holland & Knight to conduct the appeal, after Soff advised Arabia that he did not handle appeals and that Arabia should hire appellate counsel. During the appeal process, Soff died, and Arabia later discharged Soff's firm, Lavalle Brown, without cause. The appeal resulted in a reversal of the trial court's judgment with directions to reinstate the original amount of judgment. With the addition of interest, that sum amounted to $4,000,000, on which Lavalle Brown demanded a $1,000,000 fee, based on the 25% fee stated in the contingency fee contract.
After remand, Arabia settled the case with the tortfeasor for $3,750,000. Finding that the contingency had occurred, the trial court awarded the entire fee to Lavalle Brown. Based upon the evidence presented at the hearing, the trial court also found that the quantum meruit value of Soffs services was $1,000,000, refusing to reduce the maximum contract price to 25% of the actual settlement reached with the tortfeasor or for the appellate fees Arabia had to pay to Holland & Knight.
Until Arabia actually recovered something from the judgment debtor, the contingency contemplated in the fee agreement did not occur. See Restivo v. Anderson & Anderson, P.A., 453 So.2d 1167, 1169 (Fla. 4th DCA 1984) (where agreement provided for a contingent fee based upon the amount recovered, fee must be based on amount actually recovered *383 and not on verdict entered or judgment obtained). Under the rule of Rosenberg v. Levin, 409 So.2d 1016, 1021 (Fla. 1982), "[a]n attorney employed under a valid contract who is discharged without cause before the contingency has occurred or before the client's matters have concluded can recover only the reasonable value of his services rendered prior to discharge, limited by the maximum contract fee." Therefore, Lavalle Brown was entitled to the quantum meruit fee, limited by the maximum amount stated in the contract, which according to our decision in Doremus v. Florida Energy Sys. of South Florida, Inc., 676 So.2d 444, 446 (Fla. 4th DCA 1996), would be the percentage applied to the client's final recovery after appeal rather than on the original reduced judgment.
However, in this case the client settled his case for $3,750,000, and not the $4,000,000 to which he was entitled under the appellate court ruling.[1] Without provisions in the fee contract limiting the right to settle, and absent bad faith, a client is free to settle the claim after discharge of the attorney, and the lawyer is entitled only to the percentage of the settlement and not the verdict or judgment. See Restivo, 453 So.2d at 1169-70. The trial court did not find that the settlement was in bad faith. It simply determined, contrary to Restivo, that the client could not settle without Lavalle Brown's permission and thus prejudiced its right to a fee on the full $4,000,000. The trial court cited Milton Kelner, P.A. v. 610 Lincoln Road, Inc., 328 So.2d 193 (Fla.1976) and Forman v. Kennedy, 156 Fla. 219, 22 So.2d 890 (1945), for the proposition that a client cannot settle a case without the consent of an attorney and thus compromise the attorney's full fee. However, in both cases the contingency had occurred, and as the Restivo court pointed out with respect to the Forman decision, the occurrence of the contingency distinguishes it from a case such as this where the contingency has not occurred. Thus, the trial court's ruling that the reasonable value of Soff's quantum meruit recovery is $1,000,000, exceeds the maximum contract price of 25% of the actual settlement of $3,750,000.
Lavalle Brown's fee should also be reduced by the reasonable value of securing appellate representation, which Soff had declined to provide himself. Pursuant to the contract, he obligated himself to represent Arabia in the matter, including "court proceedings." As Lavalle Brown's expert conceded, to a lay person the term "court proceedings" would indicate that all court proceedings were included, including those on appeal. Furthermore, even though the expert testified that he felt that the contract was only for trial work, he admitted that appellate fees might be one of the items that would have to be subtracted from Lavalle Brown's recovery. The trial court made no finding that the contract did not include appellate presentation.
An attorney must be clear and precise in explaining the terms of a fee agreement. To the extent the contract is unclear, the agreement should be construed against the attorney. See Jaye v. Royal Saxon, Inc., 687 So.2d 978, 982 (Fla. 4th DCA), rev. denied, Small & Small, P.A., v. Jaye, 699 So.2d 1375 (Fla.1997); May v. Sessums & Mason, P.A., 700 So.2d 22, 25 (Fla. 2d DCA 1997), rev. denied, 705 So.2d 571 (Fla.1998). Here the fee agreement *384 was based upon Soff's representation of Arabia in the entire dispute, and his fee was to be based upon the recovery in all proceedings. Indeed, if "court proceedings" encompassed only the trial proceedings, then what was gained in those proceedings was only a $1,500,000 judgment. Lavalle Brown cannot claim that it is entitled to what was finally recovered after appeal on the one hand, but on the other hand reject its responsibility to perform the legal work necessary to complete those court proceedings which led to the larger recovery.
Other jurisdictions have followed the rule that where the fee agreement calls for the law firm to represent the client in the entire suit, the law firm should absorb the cost of any additional legal services incurred in obtaining the final disposition. See, e.g., A. Stanley Proner, P.C. v. Julien & Schlesinger, P.C., 134 A.D.2d 182, 520 N.Y.S.2d 771, 773 (1987); Sweeney v. Athens Reg'l Med. Ctr., 917 F.2d 1560 (llth Cir.1990).[2] We agree with this rule to the extent that such additional fees and costs are both reasonable and necessary. Certainly, incurring appellate representation to carry on an appeal in this case fits those criteria.
Finally, Arabia actually tendered a check for $223,835.59 when the first payment was made to him on the judgment. "When a court makes a determination which triggers a party's entitlement to an award of attorney's fees, the date of this determination fixes the date for awarding prejudgment interest on previously incurred attorney's fees, even though the actual amount of the award has not yet been determined." Bremshey v. Morrison, 621 So.2d 717, 718 (Fla. 5th DCA 1993). "[I]nterest accrues from the date the entitlement to attorney fees is fixed through agreement, arbitration award, or court determination." Quality Engineered Installation, Inc. v. Higley South, Inc., 670 So.2d 929, 931 (Fla.1996). By tendering payment, however, an owing party can protect itself against owing great amounts of interest caused by delay in determining the amount of fees owed. In other words, "interest ceases to accrue on amounts of attorney fees up to the amount for which an actual tender of payment is made." Id. Because Arabia tendered a check to the law firm, interest ceased to accrue on that amount from the date of the tender.
We therefore reverse to limit the amount of the fee to the maximum contract price based upon a total recovery to Arabia of $3,750,000, to calculate and reduce the fee by the reasonable value of appellate attorney's fees incurred by Arabia, and to recalculate the prejudgment interest owed thereon in accordance with this opinion.
WARNER, C.J., DELL, POLEN, STEVENSON, SHAHOOD, GROSS, TAYLOR and HAZOURI, JJ., concur.
GUNTHER, J., concurs in part and dissents in part, with opinion in which FARMER, J., concurs.
FARMER, J., concurs in part and dissents in part with opinion in which GUNTHER, J., concurs and STONE, J., concurs in part.
STONE, J., concurs in part and dissents in part with opinion.
GUNTHER, J., concurring in part, dissenting in part.
I concur with the majority with regard to the issue of prejudgment interest. *385 However, I respectfully dissent with regard to the issues of whether the fee should be limited to the maximum contract price based upon a total recovery of $3,750,000 or $4,000,000 and whether the fee should be reduced by the reasonable value of the appellate attorney's fees.
While I agree with the majority that, absent bad faith or a provision limiting the right to settle, an attorney is normally entitled only to the percentage of the subsequent settlement and not the verdict or judgment, this general principle should not be applied under the specific facts of this case. Arabia entered into a settlement agreement with the defendants, which provided for a settlement in the amount of $3,750,000 in the event payments were timely made, with $2,000,000 due by December 15, 1997, and the remaining $1,750,000 due by July 1, 1998. However, if these payments were not made in full by the July deadline, the extra $250,000 would be required to be paid upon the filing of an affidavit of nonpayment with the court. The defendants defaulted on the July payment. The trial court made findings of fact with respect to the above and concluded that "Arabia, by virtue of the default of the Defendants, is entitled to recover $4,000,000." As such, I would not limit Lavalle Brown's recovery to twenty-five percent of $3,750,000, and would affirm the trial court's award of twenty-five percent of $4,000,000.
With regard to a reduction for reasonable appellate attorney's fees, the Appellant has cited no Florida authority to support his argument that Lavalle Brown's fees should be reduced by the amount owed to Holland and Knight for appellate services. In addition, the cases cited by the majority, A. Stanley Proner, P.C. v. Julien & Schlesinger, P.C., 134 A.D.2d 182, 520 N.Y.S.2d 771 (1987), and Sweeney v. Athens Regional Medical Center, 917 F.2d 1560 (11th Cir.1990), are distinguishable.
In A. Stanley Proner, the clients hired firm A to represent them in a medical malpractice case. See A. Stanley Proner, 520 N.Y.S.2d at 772. Firm A referred the matter to firm B pursuant to a fee-sharing agreement in which each firm would receive fifty percent of the fee. See id. Firm B, without consultation with or consent of firm A, hired an attorney to act as trial counsel. See id. After the case was settled, firm B was paid $107,942 and the trial counsel was paid $35,750. See id. Thereafter, firm A sought to recover fifty percent of the total fee of $143,691. See id. The lower court awarded firm A the full amount requested without any deduction for the fee of the trial counsel hired by firm B. See id. at 773. The case had to be remanded on other grounds; however, the court made clear that on remand, if firm A prevails, no part of the trial counsel's fee should be deducted from the fees to which firm A is entitled. See id. Although the court stated that "absent a specific provision to the contrary, an attorney, such as defendant, to whom the case is referred for purposes of handling it to final disposition will ordinarily be held responsible for absorbing the cost of any additional legal services, such as those of outside trial counsel or appellate counsel, incurred in the course of attaining that final disposition," it should be remembered that firm B was required to absorb the cost of an attorney the firm itself hired to act as trial counsel. Id.
In Sweeney, Sweeney hired the law firm of Fortson and White of Atlanta ("Fortson & White") to represent her in a lawsuit. See Sweeney, 917 F.2d at 1563. When Sweeney became concerned about the antitrust portion of her claims, she contacted a Washington D.C. antitrust attorney, Susan Jenkins. See id. For purposes of the *386 antitrust portions of Sweeney's claim, Fortson & White associated Jenkins, who made suggestions and drafted memos based on the pleadings and other information provided by Fortson & White. See id. at 1563, 1572-74. Jenkins presented a bill to Fortson & White directly. See id. at 1563. When Sweeney and Fortson & White decided the case required a closer working relationship with an expert antitrust attorney and Jenkins refused to become involved on a contingency fee basis, Fortson & White invited a different antitrust attorney to associate on the case. See id. The Eleventh Circuit held that the trial court erred by ordering Sweeney to pay Jenkins's fee out of her settlement. See id. at 1572-74. Instead, Jenkins's hours should have been added to Fortson & White's and then Fortson & White would pay Jenkins as a consultant who Fortson & White associated for the antitrust portion of Sweeney's claim. See id.
Unlike the situations in A. Stanley Proner and Sweeney, Lavalle Brown did not associate Holland and Knight or hire Holland and Knight without Arabia's consent. Rather, Arabia himself hired Holland and Knight and agreed to pay them fees pursuant to a separate agreement. Lavalle Brown did not hire Holland and Knight and, therefore, should not be required to pay their fees.
Furthermore, "an attorney employed under a valid contract who is discharged without cause before the client's matters have concluded can recover only the reasonable value of his services rendered prior to discharge, limited by the maximum contract fee." See Rosenberg v. Levin, 409 So.2d 1016, 1021 (Fla.1982). Here, the trial court determined the reasonable value of the services rendered prior to discharge by considering the totality of the circumstances, including "such factors as the extensive time and labor required and expended by Soff, the novelty and complexity of issues involved in this action, the nature and considerable length of the relationship between attorney Soff and his client Arabia, the skill demanded, the recovery sought (particularly when compared to the terrific results obtained), and all the other factors set forth in Florida Bar Rule 4-1.5(b)." In concluding that Lavalle Brown carried its burden of establishing the quantum meruit value of its services, the trial court made the following factual findings:
In five years of representation of Arabia in this complex commercial matter Stuart Soff (through his predecessor firms and LBR & S) filed or responded to over 500 court filings, engaged in extensive document discovery (none of which was available to counsel at the commencement of suit), took or defended approximately 30 depositions, prepared for and attended mediation, prepared for trial several times before this case was actually tried, defeated Defendants' counterclaims, fought and overcame numerous (i) motions to dismiss; (ii) motions for judgment on the pleadings; and (iii) motions for summary judgment which included novel and complex issues. Stuart Soff and LBR & S completed extensive legal research, for three-weeks tried complex fraud claims before a jury as trial counsel, defeated Defendants counterclaims, obtained a substantial jury verdict (including punitive damages) more than eight times in excess of Arabia's demand for judgment, were co-counsel on the appeal, and assisted appellate counsel with the appeal. Extensive time and labor was expended by Stuart Soff and his paralegal, which, for two of the five years, precluded other work. All this work demanded extraordinary skills because of the difficulty of the questions involved and was *387 performed under the risk of nonpayment.
Because the $1,000,000 was awarded as the reasonable value of services actually performed prior to discharge and Lavalle Brown did not hire or associate Holland and Knight to perform any of these services, I conclude the trial court did not abuse its discretion in refusing to reduce Lavalle Brown's fees by a reasonable amount of fees for Holland and Knight's appellate services.
In sum, I would affirm the award of attorney's fees based on twenty-five percent of $4,000,000 without reduction for appellate attorney's fees, but would reverse for a recalculation of prejudgment interest.
FARMER, J., partially concurring and dissenting.
I agree with everything Judge Gunther has said in her opinion and write only to state additional reasons for my respectful disagreement with the majority.
The majority holds that the fee due the Soff law firm "should also be reduced by the reasonable value of securing appellate representation, which Soff declined to provide himself." Op. at 383. To my mind the implications of this holding are revolutionary. The majority is saying that the trial lawyer must share his fee with an additional attorney hired after trial for an appeal. Thus, the client would bear no share of the appellate attorney's fees even though he was entitled to 75% of the recovery from that verdict and had a stronger interest than the trial lawyer in reinstating the verdict on appeal. The effect of the court's decision today is to make trial lawyers responsible for appeals, even where the original fee agreement contains no such provision. The necessity for such a significant shifting of contractual duties is not analyzed or explained by the majority opinion and, I think, requires a compelling justification.
The gist of the majority holding is in its conclusion that "[p]ursuant to the contract, Soff obligated himself to represent Arabia in the matter, including `court proceedings.'" The problem is that the text of the actual contract plainly affords no factual basis to make this statement or any such construction of the fee contract. The entire fee contract reads as follows:
"This is to confirm our terms under which I will be representing you regarding your dispute with Biscayne Insurance Company, American National Corporation, and Robert J. Siedlecki and his family. You provided this office with a retainer of $10,000. The rest of my fee will be twenty-five percent (25%) of whatever is recovered, either in settlement or court proceedings. You provided this office with $2,500 toward costs. Any additional costs will be paid for by you."[3] [e.s.; omit formal parts]
The phrase "either in settlement or court proceedings" is not linked to any duty to handle an appeal explicitly set forth in this text. Clearly the locution modifies only the word "recovered" which, in turn, itself modifies only the method of calculating the amount of the fee beyond the initial $10,000. Hence the plain meaning is not that Soff obligated himself to represent Arabia in any appeal, as the majority posits, but only that, if he did represent the client and there is a recovery, the specified fee is due regardless of whether the recovery results from litigation or instead from settlement. By no reasonable process of *388 construction can the phrase be tortured into an "obligation" requiring him to represent Arabia in any appeal.
The majority credits the testimony of an expert witness who principally opined that the fee agreement meant only "trial" proceedings. The majority seizes on the fact that the expert nevertheless "conceded" that a lay person might believe the term "court proceedings" includes appeals as well as trials.[4] Fact experts cannot change the law, however, and in this instance the law upholds the Soff firm's entitlement to its full fee under the fee agreement.
The Rules Regulating The Florida Bar explicitly provide that fee agreements are enforceable according to their terms unless a recognized exception provides otherwise:
"Contracts or agreements for attorney's fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule."
See Rule 4-1.5(d), R.Reg.Fla.Bar. Nothing in the rules requires a trial lawyer to handle the appeal as well as the trial, or pay for another lawyer to do so.[5] The majority's decision thus not only erroneously fails to enforce this fee contract as written but instead actually rewrites it to add a new provision.
Rule 4-1.5 explicitly recognizes that trial and appellate work are different kinds of legal services and are compensated separately. As regards trial services, the rule plainly specifies that it covers the lawyer's services only "through the entry of judgment." See Rule 4-1.5(f)(4)(B)(i)b, R.Reg. Fla.Bar ("after the filing of an answer ... through the entry of judgment ..."). Also, when the trial lawyer does actually handle the appeal as well, rule 4-1.5 authorizes an additional 5% for the appeal, which is over and above the fee for trial. See R.Reg.Fla.Bar Rule 4-1.5(f)(4)(B)(i)d ("The contract ... may provide for ... [a]n additional [e.s.] 5% of any recovery after institution of any appellate proceeding is filed ..."). The majority disregards the rule's specific authority for trial lawyers to be paid an extra fee for handling an appeal. The rule does not support the majority's attempt to read into a simple fee agreement for trial the additional requirement that the trial lawyer either handle the appeal himself or pay for another lawyer to do so.
Nor is the fee by any means excessive. The amount claimedi.e. 25% of $4 millionis exactly the sum that Soff could charge under the rule for the trial work alone. See Rule 4-1.5(f)(4)(B)(i)b1. and 2., R.Reg.Fla.Bar ("40% of any recovery up to $1 million; plus 30% of any portion of the recovery between $1 million and $2 million; plus 15% of any portion of the recovery *389 exceeding $2 million.").[6] Thus even if appellate counsel charged a contingency fee of, say, 10% for successfully handling the appeal,[7] the total fees paid by Arabia for both trial and appellate lawyersa total of 35% of the entire recoverywould not result in an excessive fee.
There is an explicit provision in the regulatory rules, not mentioned in the majority opinion, dealing with the precise circumstance resulting from the majority's holding that the Soff firm share its fee with the appellate lawyer.[8] Clearly the appellate lawyer in this case is not qualified under rule 4-1.5(g) to share Soff's fee because the fee agreement does not disclose his participation (or, indeed, that of any other lawyers) or any division of fees, and the appellate lawyer did not assume joint legal responsibility for the representation at the trial level. The only involvement of appellate counsel came after the case was tried and was on its way to the appellate court. It hardly needs saying that Soff did not voluntarily agree to share his fee with appellate counsel as rule 4-1.5(g) contemplates; it is being forced on the Soff law firm by this court.
The amount of the fee awarded the Soff law firm conforms to the amount due under *390 the fee agreement. The trial court held as a factual matter that the $250,000 sum conditionally forgiven in the settlement agreement was ultimately due the client anyway because of the default of the judgment debtors in the settlement. The majority's decision ignores this factual finding, which is fully supported by the record. The majority would allow the client to have the $250,000 stay quietly tucked away, while he uses its ostensible nonpayment to reduce the fee due the Soff firm and then, after he has underpaid Soff's fee, recover the unpaid $250,000 as well.
I do not believe that any policy of client autonomy embraced by Rosenberg v. Levin, 409 So.2d 1016 (Fla.1982), requires this result. In Rosenberg, the court distinguished its previous decision in Milton Kelner, P.A. v. 610 Lincoln Road, Inc., 328 So.2d 193 (Fla.1976), where it had approved the enforcement of a specific contingency contract but left open whether quantum meruit was the proper rule in contingency fee cases generally. The Rosenberg court did not overrule or suggest that its holding in Kelner would be any different under the quantum meruit rule it adopted as the general rule in Rosenberg. In fact both Rosenberg and Kelner were authored by Justice Overton, so it is highly doubtful that the latter was intended to be the contradiction of the former.
In Kelner the client refused to accept the insurer's offer of policy limits before trial in a suit on an insurance contract and fired his lawyer. The client rejected the tender of the settlement proceeds and hired a new lawyer who negotiated a better deal. As the Rosenberg court itself later noted of Kelner: "In effect, the maximum recovery from the insurance company had been obtained at the time of the discharge." 409 So.2d at 1018. The court ruled that Kelner was entitled to the full fee set by his contract.
The Rosenberg rule is that when the client discharges a trial lawyer on a contingency fee before the case has been settled or tried, the discharged lawyer is entitled to a fee if there is a recovery but the fee is limited to the value of his services without exceeding the price set by the contract. Most courts have focusedand quite properly soon whether the client has ultimately recovered any damages as the triggering mechanism for such a fee.[9]
Rosenberg says that discharge before the resolution of the matter presents "two conflicting interests":
"The first is the need of the client to have confidence in the integrity and ability of his attorney and, therefore, the need for the client to have the ability to discharge his attorney when he loses that necessary confidence in the attorney. The second is the attorney's right to adequate compensation for work performed."
409 So.2d at 1019. The court later elaborated:
"Failure to limit quantum meruit recovery defeats the policy against penalizing the client for exercising his right to discharge. However, attorneys should not be penalized either and should have the opportunity to recover for services performed."
409 So.2d at 1021.
The essence of Rosenberg is the right of a client to change attorneys before a matter *391 has been completedthe right to change horses in midstream. After a matter has been pursued to a successful conclusion the question of changing legal representatives is moot. Thus a client who hires a lawyer to try a specific claim has no interest in changing trial lawyers after the trial has been successfully completed. This client who must use a different lawyer on appeal is not being penalized by being held to his contract fee for the trial lawyer.[10] After a trial lawyer has completed prosecution of a client's claim to a substantial jury verdict awarding everything claimed, the client's interest in the qualities of his trial attorney has been entirely fulfilled. The full measure of confidence in his integrity and ability have been amply vindicated.
In our case today, Soff spent years of his career litigating Arabia's claim in a weeks-long trial that resulted in a substantial verdict which was restored on appeal. The judgment debtors later defaulted on the settlement agreement negotiated after our decision in the appeal was handed down, and the result was that even under the settlement agreement the judgment debtors owed the same amount as the Soff law firm had achieved in the trial court. Moreover it appears that all of the judgment has actually been paid or is available to be paid to Arabia,[11] save for the $250,000 sum contemplated by the settlement agreement. But because the judgment debtors defaulted in their performance under the settlement agreement, even the $250,000 sum is not only due and payable but fully recoverable from these very solvent defendants, who happen to include a successful insurance company.[12]
Legal rules are intended to operate in the context of the facts underlying their adoption. Under Rosenberg when a client discharges a lawyer without cause before the claim has been resolved, the reasons for the quantum meruit rule are manifest. When, however, as here, the trial lawyer's services are at an end because the judgment has been appealed and the amount awarded by the jury verdict upheld on appeal, any special reasons for limiting the trial lawyer to quantum meruit simply do not exist. There is no reason to apply Rosenberg when its purposes have been fulfilled.
Hence I do not believe that Rosenberg even applies in this particular circumstance *392 where the trial lawyer has fully performed his representation of the client to a substantial money judgment. No lawyer has been discharged in this case. No client is in midstream while the outcome of his claim hangs in the balance, wondering if his initially chosen lawyer is the right one. Here the trial lawyer has achieved every goal of his representation and the client paid all but a small portion that he is allowing to remain suspended.
I personally think it particularly unwise to impose an appellate obligation on trial lawyers where their fee agreements contain no undertaking for them to handle the appeal for the same fee charged for the trial or bear the cost for another lawyer to do so. To do so is to ignore human nature: the understandable pride of lawyers in their professional skills and their desire to retain the full amount of the fees they have earned under an agreement. In my opinion the consequence will be to impel some trial lawyers into becoming appellate lawyers when maybe they should not do so.
My own experience in both roles suggests that most of the time the trial lawyer is well-advised to bring in another lawyer to handle the appeal. This is not because appellate law is so arcane that only the cognoscenti can handle it. It is really because the lawyer who handled the trial is often unable to discern the appellate forest from the trial trees. Issues that consumed the trial lawyer are often of marginal significance at best on appeal; issues that seemed trivial during trial may become critical on review. In short, if we judges have any power to add such prescriptions to the Rules Regulating the Florida Bar (and I rather doubt that we do) I would not favor adopting the new rule created by the majority because of its unintended consequences.
STONE, J., concurring in part and dissenting in part.
I concur in Judge Farmer's opinion with one exception. In my judgment, the amount of reasonable appellate attorney's fees, incurred by the client in good faith, should be deducted "off the top" by the trial court in determining a net recovery that is considered in arriving at the trial attorney's fee.
NOTES
[1] The client and the judgment debtor entered into a settlement agreement whereby the debtor agreed to make several payments constituting $3,750,000 and to pay a penalty of $250,000 if the final payment was not made timely, which it was not. The client still recovered only $3,750,000 and not $4,000,000.
[2] This rule is simple contract law. Where a party contracts to perform and fails to render full performance, the damaged party may recover his reasonable cost to complete performance of the work.
[3] The document is signed by Stuart Soff and Leonard Arabia on the letterhead of Soff's law firm.
[4] It should be unnecessary to point out that appeals judges are not trial judges and are not allowed to credit one expert over the decision of the trial judge who may have rejected this particular testimony or given it no weight, as he is clearly allowed to do. In any event, there is nothing in the record suggesting that this legal fee expert was qualified to testify as to the probable common understandings of nonlawyers as to the meaning of language used in a fee contract. Moreover I need hardly add that if a fee contract is unambiguous no expert testimony can change or explain its meaning, for the meaning of a contract is for the court as a matter of law.
[5] The fee agreement in this case is not illegal and has not been found to have been obtained through improper advertising or solicitation.
[6] I recognize that the Bar's contingency fee rule is phrased as applying to "personal injury" claims, and that the claim in this case was for common law fraud. See Rule 4-1.5(f)(4) ("for personal injury [e.s.] or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims"). It appears, however, that the supreme court has interpreted this rule to have a broader sweep, applying generally to any contingency fee agreement. See Chandris S.A. v. Yanakakis, 668 So.2d 180, 185-186 (Fla.1996) ("we hold that a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees in order to be enforceable. We have determined that the requirements for contingent fee contracts are necessary to protect the public interest. Thus, a contract that fails to adhere to these requirements is against public policy and is not enforceable by the member of The Florida Bar who has violated the rule."); see also In re Amendment to Code of Professional Responsibility (Contingent Fees ), 349 So.2d 630, 632 (Fla.1977) ("The proposed Amendments apply to contingent fee arrangements in all cases."); but see The Florida Bar Re Amendment To the Code of Professional Responsibility (Contingent Fees), 494 So.2d 960, 962 (Fla.1986) ("As the schedule now stands, it covers `recovery' in all personal injury and wrongful death contingent fee contracts, not just those in medical malpractice cases."). Because Chandris involved a claim for tortious interference with a contract, I see no reason why rule 4-1.5(f)(4) should not apply to a claim for common law fraud.
[7] I do not believe that the 5% provision for appellate fees by trial counsel in the Rule is binding on separate counsel who handles only the appeal. See R.Reg. Fla.Bar Rule 4-1.5(f)(4)(B)(i)d ("An additional 5% of any recovery after institution of any appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment."). In my opinion, the text of the rule means that a new attorney (unrelated to trial counsel's firm) who is brought in to handle an appeal could charge more than 5% for the appeal, circumstances otherwise permitting, see rule 4-1.5(b). Here the circumstances would support the appellate counsel charging a fee of 10%: the trial court had ordered a remittitur or a new trial on damages, and appellate counsel were successful in getting the new trial reversed and the original jury verdict reinstated.
[8] See R.Reg.Fla.Bar Rule 4-1.5(g) ("Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and (1) the division is in proportion to the services performed by each lawyer; or (2) by written agreement with the client (A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and (B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.").
[9] The facts in Rosenberg are not precise as to how far the matter had proceeded when the client decided to change lawyers, and all we know from the opinion is that he discharged his original lawyer "before the legal controversy was resolved." 409 So.2d at 1018. The client then settled the matter for a sum below the point at which the discharged lawyer could have been entitled to a percent of the amount recovered.
[10] Frankly, even where the trial lawyer's fee agreement contains a provision for handling the appeal, see Rule 4-1.5(4)(B)(i)d., R.Reg. Fla.Bar ("an additional 5% of any recovery after institution of any appellate proceeding is filed"), I do not read that alone as requiring the trial lawyer to handle the appeal as well, or pay for another lawyer to do so. If trial lawyers are going to undertake such an obligation, I think the agreement must explicitly state that precise provision as part of the obligation. I do not agree that appellate judges can read such an obligation into an otherwise silent agreementand especially not under any theory of strict construction of fee agreements. See Sholkoff v. Boca Raton Community Hosp., Inc., 693 So.2d 1114, 1118 (Fla. 4th DCA 1997) (holding that strict construction of fee agreements means only that the relative rights and duties of the parties to such contracts must be stated clearly; if an agreement for one party to pay another party's attorney's fees is to be enforced it must unambiguously state that intention and clearly identify matter in which fees are recoverable).
[11] By the time of the hearing on the Soff law firm's charging lien, Arabia had recovered $2.6 million and the remainder was apparently in the process of being turned over to him. No has suggested that the $3.75 million has not in fact been recovered.
[12] There was evidence at the fraud trial that the Biscayne National Insurance has a net worth of several million dollars. No one has suggested any doubt about collecting the full amount of the judgment. There was also a supersedeas bond that should more than cover the sum of $250,000.