978 So.2d 91 (2007)
In re AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR.
No. SC06-736.
Supreme Court of Florida.
December 20, 2007.
Rehearing Denied March 19, 2008.
John F. Harkness, Jr., Executive Director, Francisco R. Angones, President, and Paul F. Hill, General Counsel, The Florida Bar, Tallahassee, FL, for Petitioner.
William Sumner Scott, J.D., Executive Director, Judicial Equality Foundation, Inc., on behalf of Judicial Equality Foundation, Inc.; and Pamela D. Cichon, Chair, Government Lawyer Section (2005-2006), Senior Assistant City Attorney, City of St. Petersburg, St. Petersburg, FL, and Keith W. Rizzardi, Chair, Government Lawyer Section (2003-2004), Trial Attorney, U.S. Department of Justice, Washington, D.C., Responding with comments.
PER CURIAM.
The Florida Bar petitions this Court to consider proposed amendments to the Rules Regulating the Florida Bar. We have jurisdiction. See art. V, 15, Fla. Const.
The Florida Bar submitted several proposals to the Board of Governors of The Florida Bar for its recommendation. The Board approved the proposals. Thereafter, the proposals were published for comment in the March 15, 2006, edition of The Florida Bar News. In that publication, the Bar instructed interested parties to file any comments directly with the Court. On April 26, 2006, the Bar filed the proposals with the Court. Only one comment, from the Judicial Equality Foundation, was filed with the Court regarding these proposals.
The Bar proposes amendments to rules 1-7.3 (Membership Fees); 3-2.1 (Generally); 3-5.1 (Generally); 3-6.1 (Generally); 3-7.5 (Procedures Before the Board of Governors); 3-7.6 (Procedures Before a Referee)[1]; 3-7.11 (General Rules of Procedure); 3-7.16 (Limitation on Time to Bring Complaint); 4-1.5 (Fees and Costs for Legal Services); 4-6.5 (Voluntary Pro Bono Plan); 5-1.1 (Trust Accounts); 6-1.2 (Public Notice); 10-2.1 (Generally); 10-3.1 (Generally); 10-4.1 (Generally); 10-7.2 (Proceedings for Indirect Criminal Contempt); 14-2.1 (Generally); 14-6 (Nature; Enforcement of Award; Effect of Failure to Pay); 14-6.1 (Binding Nature; Enforcement; and Effect of Failure to Pay Award); 17-1.2 (Definitions); and 17-1.3 (Activities). The Bar also proposes new rule 1-12.2 (Supreme Court Procedures for Review of Proposed Amendments) and amendments to Bylaw 2-7.3 (Creation of Sections and Divisions).
After considering the Bar's petition and the comment, the Court adopts The Florida Bar's proposals, except as follows.
The Bar proposes new rule 1-12.2 (Supreme Court Procedures for Review of Proposed Amendments), which would provide a court "conference and dialogue" process, rather than a "case and controversy" format, as an option for this Court to consider amendments to the Rules Regulating the Florida Bar. The Bar asserts that the formality of oral argument, as the exclusive means for considering bar rule amendments, could be occasionally replaced *92 with an informal "dialogue" among Justices, proponents, commentators, and other interested parties. The Bar argues that the "conference and dialogue" approach could be beneficial in addressing changes to the Bar rules, due to the variety of matters that the Bar presents to the Court.
This proposal would provide the Court with an alternative to existing Bar rulemaking procedures. However, the proposal raises several issues that must be studied before implementing such a procedure. Therefore, the Court does not adopt the proposal at this time. Because the proposal presents significant unaddressed issues, the Court requests that the Bar undertake and submit a study addressing how, in states where the high courts have procedural rule or Bar rulemaking authority, those courts process their rule amendments. The report should also address the issue of ex parte communication with regard to communications among the Justices, proponents, and commentators. See Code of Judicial Conduct Canon 3(B)(7); Rose v. State, 601 So.2d 1181, 1183 (Fla. 1992); In re Clayton, 504 So.2d 394, 395 (Fla.1987). In preparing the report, the Bar is directed to work with the Rules of Judicial Administration Committee.
Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. Deletions are indicated by struck-through type, and new language is indicated by underscoring. The amendments shall become effective on March 1, 2008, at 12:01 a.m.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, C.J., concurs in part and dissents in part with an opinion.
LEWIS, C.J., concurring in part and dissenting in part.
Although I agree with most of the new amendments, I dissent with regard to the cumulative and deceptive designation termed "expert." For a thorough explanation of my disagreement, refer to my concurring-in-part-and-dissenting-in-part opinion in In re Amendments to the Rules Regulating the Florida BarAdvertising, 971 So.2d 763 (Fla.2007).

APPENDIX

RULE 1-7.3 MEMBERSHIP FEES
(a)-(e) [No Change]
(f) Membership Fees Exemption for Activated Reserve Members of the Armed Services. Members of The Florida Bar engaged in reserve military service in the Armed Forces of the United States who are called to active duty for 30 days or more during the bar's fiscal year shall be exempt from the payment of membership fees required under this rule. For purposes of this rule, the Armed Forces of the United States includes the United States Army, Air Force, Navy, Marine Corps, Coast Guard, as well as the Army National Guard, Army Reserve, Navy Reserve, Marine Corps Reserve, the Air National Guard of the United States, the Air Force Reserve, and the Coast Guard Reserve. Requests for an exemption shall be made within 15 days before the date that membership fees are due each year or within 15 days of activation to duty of a reserve member. To the extent membership fees were paid despite qualifying for this exemption, such membership fee shall be reimbursed by The Florida Bar within 30 days of receipt of a member's request for exemption. Within 30 days of leaving active duty status, the member shall report to The Florida Bar that he or she is no *93 longer on active duty status in the United States Armed Forces.

BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS
Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable.
(a) Sections. The following sections of The Florida Bar have been created by the board of governors:
(a1) Administrative Law Section;
(b2) Appellate Practice Section;
(c3) Business Law Section;
(d4) City, County and Local Government Law Section;
(e5) Criminal Law Section;
(f6) Elder Law Section;
(g7) Entertainment, Arts, and Sports Law Section;
(h8) Environmental and Land Use Law Section;
(i9) Equal Opportunities Law Section;
(j10) Family Law Section;
(k11) General Practice, Solo and Small Firm Section;
(l12) Government Lawyer Section;
(m13) Health Law Section;
(n14) International Law Section;
(o15) Labor and Employment Law Section;
(p16) Practice Management and Development Section;
(q17) Public Interest Law Section;
(r18) Real Property, Probate, and Trust Law Section;
(s19) Tax Section;
(t20) Trial Lawyers Section; and
(u21) Workers' Compensation Section.
(b) Divisions. The following divisions of The Florida Bar have been created by the board of governors:
(a1) Out-of-State Practitioners Division; and
(b2) Young Lawyers Division.

RULE 3-2.1 GENERALLY
Wherever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a)-(o) [No Change]
(p) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular grievance committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such grievance committee. In circuits having an unequal number of grievance committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for all pending cases from a particular committee passes to the new designated reviewer. The chief branch discipline counsel will be given written notice of changes in the designated reviewing members for a particular committee.
(q) [No Change]

RULE 3-5.1 GENERALLY
A judgment entered, finding a member of The Florida Bar guilty of misconduct, shall include one or more of the following disciplinary measures:
(a) [No Change]
*94 (b) Minor Misconduct, Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction.
(1) Criteria. In the absence of unusual circumstances misconduct shall not be regarded as minor if any of the following conditions exist:
(A) the misconduct involves misappropriation of a client's funds or property;
(B) the misconduct resulted in or is likely to result in actual prejudice (loss of money, legal rights, or valuable property rights) to a client or other person;
(C) the respondent has been publicly disciplined in the past 3 years;
(D) the misconduct involved is of the same nature as misconduct for which the respondent has been disciplined in the past 5 years;
(E) the misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent; or
(F) the misconduct constitutes the commission of a felony under applicable law.
(2) Discretion of Grievance Committee. Despite the presence of 1 or more of the criteria described in subdivision (1) above, a grievance committee may recommend an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program when unusual circumstances are present. When the grievance committee recommends an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program under such circumstances, its report shall contain a detailed explanation of the circumstances giving rise to the committee's recommendation.
(3) Recommendation of Minor Misconduct. If a grievance committee finds the respondent guilty of minor misconduct or if the respondent shall admit guilt of minor misconduct and the committee concurs, the grievance committee shall file its report recommending an admonishment, recommending the manner of administration, and for the taxing of costs, and an assessment or administrative fee in the amount of $1,250 against the respondent. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the report is not referred to the disciplinary review committee by the designated reviewer ([ as provided in rule 3-7.5(b))], the report shall then be served on the respondent by bar counsel. The report and finding of minor misconduct shall become final unless rejected by the respondent within 15 days after service of the report. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause. If the report of minor misconduct is not rejected by the respondent, notice of the finding of minor misconduct shall be given, in writing, to the complainant.
(4) Rejection of Minor Misconduct Reports. The rejection by the board of governors of a grievance committee report of minor misconduct, without dismissal of the case, or remand to the grievance committee, shall be deemed a finding of probable cause. The rejection of such report by a respondent shall be deemed a finding of probable cause for minor misconduct. Upon trial before a *95 referee following rejection by a respondent of a report of minor misconduct, the referee may recommend any discipline authorized under these rules.
(5) Admission of Minor Misconduct. Within 15 days after a finding of probable cause by a grievance committee, a respondent may tender a written admission of minor misconduct to bar counsel or the grievance committee. An admission of minor misconduct may be conditioned upon acceptance by the grievance committee, but the respondent may not condition the admission of minor misconduct upon the method of administration of the admonishment or upon nonpayment of costs incurred in the proceedings. Such an admission may be tendered after a finding of probable cause (but before the filing of a complaint) only if such an admission has not been previously tendered. If the admission is tendered after a finding of probable cause, the grievance committee may consider such admission without further evidentiary hearing and may either reject the admission, thereby affirming its prior action, or accept the admission and issue its report of minor misconduct. If a respondent's admission is accepted by the grievance committee, the respondent may not thereafter reject a report of the committee recommending an admonishment for minor misconduct. If the admission of minor misconduct is rejected, such admission shall not be considered or used against the respondent in subsequent proceedings.
(c)-(j) [No Change]

3-6. EMPLOYMENT OF CERTAIN ATTORNEYS OR FORMER ATTORNEYS

RULE 3-6.1 GENERALLY
An authorized business entity (as defined elsewhere in these rules) may employ individuals subject to this rule tosuspended attorneys and former attorneys who have been disbarred or whose disciplinary resignations have been allowed [for purposes of this rule such attorneys and former attorneys are referred to as either "individual(s) subject to this rule", "individual(s)", or "employee(s)"]. Subject to the exceptions set forth below these individuals may perform such those services only as that may ethically be performed by other lay personsnonlawyers employed by authorized business entities.
(a) Individuals Subject to This Rule. Individuals subject to this rule are suspended attorneys and former attorneys who have been disbarred, disbarred on consent, or whose disciplinary resignations have been allowed.
(b) Definition of Employment. An individual subject to this rule shall be considered as an employee of an authorized business entity if the individual is a salaried or hourly employee or volunteer worker for an authorized business entity, or an independent contractor providing services to an authorized business entity.
(cb) Employment by Former Subordinates Prohibited for a Period of 3 Years. An individual subject to this rule may not, for a period of 3 years from the entry of the order pursuant to which the suspension, disciplinary resignation, or disbarment became effective, or until the individual is reinstated or readmitted to the practice of law, whichever occurs sooner, be employed by or work under the supervision of another attorney who was supervised by the individual at the time of or subsequent to the acts giving rise to the order.
(dc) Notice of Employment Required. Before employment commences the employer shall provide The Florida Bar with *96 a notice of employment and a detailed description of the intended services to be provided by the employee.
(ed) Prohibited Conduct.
(1) Direct Client Contact. No employee Individuals subject to this rule shall not have direct contact with any client. Direct client contact does not include the participation of the employee individual as an observer in any meeting, hearing, or interaction between a supervising attorney and a client.
(2) Trust Funds or Property. Individuals subject to this rule shall not receive, disburse, or otherwise handle trust funds or property.
(3) Practice of Law. Individuals subject to this rule shall not engage in conduct that constitutes the practice of law and such individuals shall not hold themselves out as being eligible to do so.
(fe) Quarterly Reports by Employee and Employer Required. The individual subject to this rule ( employee) and employer shall submit sworn information reports, quarterly based on a calendar year, to The Florida Bar. Such reports shall be filed quarterly, based on the calendar year, and include statements that no aspect of the employee's work has involved the unlicensed practice of law, that the employee has had no direct client contact, and that the employee did not receive, disburse, or otherwise handle trust funds or property, and that the employee is not being supervised by an attorney whom the employee supervised within the 3 years immediately previous to the date of the suspension, disbarment, or disciplinary resignation.

RULE 3-7.5 PROCEDURES BEFORE THE BOARD OF GOVERNORS
(a) Review by the Designated Reviewer. Notice of grievance committee action recommending either diversion to a practice and professionalism enhancement program or finding either no probable cause, no probable cause with a letter of advice, minor misconduct, or probable cause shall be given to the designated reviewer for review. Upon review of the grievance committee action, the designated reviewer may request the grievance committee to reconsider its action or may refer the grievance committee action to the board of governors for its review. The designated reviewer may request grievance committee reconsideration or refer the matter to the disciplinary review committee of the board of governors within 30 days of notice of grievance committee action. The request for a grievance committee reconsideration or referral to the disciplinary review committee shall be in writing and shall be submitted to bar counsel. For purposes of this subdivision letters, memoranda, handwritten notes, facsimile documents, and email shall constitute "in writing."
(1) Requests for Grievance Committee Reconsideration. If the designated reviewer requests grievance committee reconsideration, bar counsel shall forward the request to the chair of the grievance committee and shall give notice to the respondent and complainant that the request has been made. If the grievance committee agrees to reconsider the matter, the rule prescribing procedures before a grievance committee shall apply.
(2) Referrals to Disciplinary Review Committee and Board of Governors. If the designated reviewer refers the matter to the disciplinary review committee, bar counsel shall prepare and submit a discipline agenda item for consideration by the committee. Bar counsel shall give notice to respondent and complainant that the designated reviewer has made the referral for review.

*97 (3) Nature of Disciplinary Review Committee and Board of Governors Review. The Florida Bar is a party in disciplinary proceedings and has no authority to adjudicate rights in those proceedings. Any such review on referral from a designated reviewer is in the nature of consultation on pending litigation and therefore is not subject to intervention by persons outside the relationship between the bar and its counsel.
(4) Effect of Failure to Timely Make the Request for Reconsideration or Referral for Review. If the designated reviewer fails to make the request for reconsideration or referral within the time prescribed, the grievance committee action shall become final.
(5) Authority of Designated Reviewer to Make Recommendations. When the designated reviewer makes a request for reconsideration or referral for review, the designated reviewer may recommend: Recommendations of the designated reviewer may include:
(1A) referral of the matter to the grievance mediation program;
(2B) referral of the matter to the fee arbitration program;
(3C) closure of the disciplinary file by diversion to a component of the practice and professionalism enhancement program;
(4D) closure of the disciplinary file by the entry of a finding of no probable cause;
(5E) closure of the disciplinary file by the entry of a finding of no probable cause with a letter of advice;
(6F) a finding of minor misconduct; or
(7G) a finding of probable cause that further disciplinary proceedings are warranted.
(b)-(g) [No Change]

RULE 3-7.6 PROCEDURES BEFORE A REFEREE
(a)-(m) [No Change]
(n) The Record.
(1) Recording of Testimony. All hearings at which testimony is presented shall be attended by a court reporter who shall record all testimony. Transcripts of such testimony are not required to be filed in the matter, unless requested by a party, who shall pay the cost of transcription directly, or ordered by the referee, in which case the costs thereof are subject to assessment as elsewhere provided in these rules.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
(3) Preparation and Filing. The referee, with the assistance of bar counsel, shall prepare the record, certify that the record is complete, serve a copy of the index of the record on the respondent and The Florida Bar, and file the record with the office of the clerk of the Supreme Court of Florida.
(4) Supplementing or Removing Items from the Record. The respondent and The Florida Bar may seek to supplement the record or have items removed from the record by filing a motion with the referee for such purpose, provided such motion is filed within 15 days of the service of the index. Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided *98 for in the rule on appellate review under these rules.
(o)-(q) [No Change]

Court Comment

[No Change]

RULE 3-7.11 GENERAL RULES OF PROCEDURE
(a)-(e) [No Change]
(f) Contempt. When a disciplinary agency, as defined elsewhere in these rules, finds that a person is in contempt under these rules, such person may be cited for contempt in the following manner:
(1) Petition for Contempt and Order to Show Cause. When a person is found in contempt by a disciplinary agency, bar counsel shall file a petition for contempt and order to show cause with the Supreme Court of Florida.
(2) Order to Show Cause. On review of a petition for contempt and order to show cause, the supreme court may issue an order directing the person to show cause why such person should not be held in contempt and appropriate sanctions imposed. The order of the supreme court shall fix a time for a response.
(3) Failure to Respond to Order to Show Cause. Upon failure to timely respond to an order to show cause, the matters alleged in the petition shall be deemed admitted and the supreme court may enter a judgment of contempt and impose appropriate sanctions. Failure to respond may be an additional basis on which a judgment of contempt may be entered and sanctions imposed.
(4) Reply of The Florida Bar. When a timely response to an order to show cause is filed, The Florida Bar shall have 10 days, or such other time as the supreme court may order, from the date of filing in which to file a reply.
(5) Supreme Court Action. After expiration of the time to respond to an order to show cause and no response is timely filed, or after the reply of The Florida Bar has been filed, or the time therefore has expired without such filing, the supreme court shall review the matter and issue an appropriate judgment. Such judgment may include any sanction that a court may impose for contempt and, if the person found in contempt is a member of The Florida Bar, may include any disciplinary sanction authorized under these rules.
If the supreme court requires factual findings, the supreme court may direct appointment of a referee as elsewhere provided in these rules. Proceedings for contempt referred to a referee shall be processed in the same manner as disciplinary proceedings under these rules, including but not limited to the procedures provided therein for conditional guilty pleas for consent judgments.
(6) Preparation and Filing of Report of Referee and Record. The referee shall prepare and file a report and the record in cases brought under this rule. The procedures provided for in the rule on procedure before a referee elsewhere under these rules shall apply to the preparation, filing, and review of the record herein.
(7) Appellate Review of Report of Referee. Any party to the contempt proceedings may seek review of the report of referee in the manner provided in the rule on appellate review of disciplinary proceedings under these rules.
(g)-(h) [No Change]

*99 RULE 3-7.16 LIMITATION ON TIME TO BRING COMPLAINT
(a) Time for Inquiries, and Complaints, and Reopened Cases. Inquiries raised or complaints presented by or to The Florida Bar under these rules shall be commenced within 6 years from the time the matter giving rise to the inquiry or complaint is discovered or, with due diligence, should have been discovered.
A reopened disciplinary investigation shall not be barred by this rule if the investigation is reopened within 1 year of the date on which the matter was closed, except that reopened investigations based on deferrals made in accord with bar policy and as authorized elsewhere in these Rules Regulating The Florida Bar shall not be barred if reopened within 1 year of the conclusion of the civil, criminal, or other proceedings on which deferral was based.
(b) Exception for Theft or Conviction of a Felony Criminal Offense. There shall be no limit on the time in which to present, reopen, or bring a matter alleging theft or conviction of a felony criminal offense by a member of The Florida Bar.
(c) Tolling Based on Fraud, Concealment, or Misrepresentation. In matters covered by this rule where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the matter giving rise to the inquiry or complaint, the limitation of time in which to bring or reopen an inquiry or complaint within this rule shall be tolled.
(d) [No Change]

RULE 4-1.5 FEES AND COSTS FOR LEGAL SERVICES
(a)-(h) [No Change]
(i) Arbitration Clauses. A lawyer shall not make an agreement with a potential client prospectively providing for mandatory arbitration of fee disputes without first advising that person in writing that the potential client should consider obtaining independent legal advice as to the advisability of entering into an agreement containing such mandatory arbitration provisions. A lawyer shall not make an agreement containing such mandatory arbitration provisions unless the agreement contains the following language in bold print:
NOTICE: This agreement contains provisions requiring arbitration of fee disputes. Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.

STATEMENT OF CLIENT'S RIGHTS FOR CONTINGENCY FEES

[No Change]

Comment

[No Change]

RULE 4-6.5 VOLUNTARY PRO BONO PLAN
(a) [No Change]
(b) Standing Committee on Pro Bono Legal Service. The president-elect of The Florida Bar shall appoint a standing committee on pro bono legal service to the poor.

*100 (1) Composition of the Standing Committee. The standing committee shall be composed of:
(A) 5 members of the board of governors of The Florida Bar, 1 of whom shall be the chair or a member of the access to the legal system committee of the board of governors;
(B) 5 past or current directors of The Florida Bar Foundation;
(C) 1 trial judge and 1 appellate judge;
(D) 2 representatives of civil legal assistance providers;
(E) 2 representatives from local and statewide voluntary bar associations;
(F) 2 public members, 1 of whom shall be a representative of the poor
(G) the president or designee of the Board of Directors of Florida Legal Services, Inc.; and
(H) 1 representative of the out-of-state practitioners' division of The Florida Bar.
(2) Responsibilities of the Standing Committee. The standing committee shall:
(A) receive reports from circuit committees submitted on standardized forms developed by the standing committee;
(B) review and evaluate circuit court pro bono plans;
(C) beginning in the first year in which individual attorney pro bono reports are due, submit an annual report as to the activities and results of the pro bono plan to the board of governors of The Florida Bar, The Florida Bar Foundation, and to the Supreme Court of Florida;
(D) present to the board of governors of The Florida Bar and to the Supreme Court of Florida any suggested changes or modifications to the pro bono rules.
(c)-(d) [No Change]
RULE 5-1.1 TRUST ACCOUNTS
(a)-(f) [No Change]
(g) Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used herein, the term:
(A) "nominal or short term" describes funds of a client or third person that, pursuant to subdivision (3), below, the lawyer has determined cannot practicably be invested for the benefit of the client or third person;
(B) "Foundation" means The Florida Bar Foundation, Inc.;
(C) "IOTA account" means an interest or dividend-bearing trust account benefitting benefiting The Florida Bar Foundation established in an eligible institution for the deposit of nominal or short-term funds of clients or third persons;
(D) "Eligible Institution" means any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws, or any open-end investment company registered with the Securities and Exchange Commission and authorized by federal or state laws to do business in Florida, all of which must meet the requirements set out in subdivision (5), below.
(E) "Interest or dividend-bearing trust account" means a federally insured checking account or investment product, including a daily financial institution repurchase agreement or a *101 money market fund. A daily financial institution repurchase agreement must be fully collateralized by, and an open-end money market fund must consist solely of, United States Government Securities. A daily financial institution repurchase agreement may be established only with an eligible institution that is deemed to be "well capitalized" or "adequately capitalized" as defined by applicable federal statutes and regulations. An openend money market fund must hold itself out as a money market fund as defined by applicable federal statutes and regulations under the Investment Company Act of 1940, and have total assets of at least $250,000,000. The funds covered by this rule shall be subject to withdrawal upon request and without delay.
(2) Required Participation. All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing law from an office or other business location within the state of Florida shall be deposited into one or more IOTA accounts, except as provided elsewhere in this chapter. Only trust funds that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of this rule.
(3) Determination of Nominal or Short-Term Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
(A) the amount of a client's or third person's funds to be held by the lawyer or law firm;
(B) the period of time such funds are expected to be held;
(C) the likelihood of delay in the relevant transaction(s) or proceeding(s);
(D) the cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and
(E) minimum balance requirements and/or service charges or fees imposed by the eligible institution.
The determination of whether a client's or third person's funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
(4) Notice to Foundation. Lawyers or law firms shall advise the Foundation, at Post Office Box 1553, Orlando, Florida XXXXX-XXXX, of the establishment of an IOTA account for funds covered by this rule. Such notice shall include: the IOTA account number as assigned by the eligible institution; the name of the lawyer or law firm on the IOTA account; the eligible institution name; the eligible institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established the IOTA account.
(5) Eligible Institution Participation in IOTA. Participation in the IOTA program is voluntary for banks, savings and loan associations, and investment companies. Institutions that choose to offer *102 and maintain IOTA accounts must meet the following requirements:
(A) Interest Rates and Dividends. Eligible institutions shall maintain IOTA accounts which pay the highest interest rate or dividend generally available from the institution to its non-IOTA account customers when IOTA accounts meet or exceed the same minimum balance or other account eligibility qualifications, if any.
(B) Determination of Interest Rates and Dividends. In determining the highest interest rate or dividend generally available from the institution to its non-IOTA accounts in compliance with subdivision (5)(A), above, eligible institutions may consider factors, in addition to the IOTA account balance, customarily considered by the institution when setting interest rates or dividends for its customers, provided that such factors do not discriminate between IOTA accounts and accounts of non-IOTA customers, and that these factors do not include that the account is an IOTA account.
(C) Remittance and Reporting Instructions. Eligible institutions shall:
(i) calculate and remit interest or dividends on the balance of the deposited funds, in accordance with the institution's standard practice for non-IOTA account customers, less reasonable service charges or fees, if any, in connection with the deposited funds, at least quarterly, to the Foundation;
(ii) transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer's or law firm's IOTA account number as assigned by the institution, the rate of interest applied, the period for which the remittance is made, the total interest or dividend earned during the remittance period, the amount and description of any service charges or fees assessed during the remittance period, and the net amount of interest or dividend remitted for the period; and
(iii) transmit to the depositing lawyer or law firm, for each remittance, a statement showing the amount of interest or dividend paid to the Foundation, the rate of interest applied, and the period for which the statement is made.
(6) Small Fund Amounts. The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable eligible institution service charges or fees.
(7) Confidentiality and Disclosure. The Foundation shall protect the confidentiality of information regarding a lawyer's or law firm's trust account obtained by virtue of this rule. However, the Foundation shall, upon an official written inquiry of The Florida Bar made in the course of an investigation conducted under these Rules Regulating The Florida Bar, disclose requested relevant information about the location and account numbers of lawyer or law firm trust accounts.
(h)-(j) [No Change]

Comment

[No Change]

RULE 6-1.2 PUBLIC NOTICE
The Florida Bar may cause a public notice to be promulgated where and when *103 it deems necessary, including, for example, telephone directory yellow pages, in substantially the following form:

NOTICE

FOR THE GENERAL INFORMATION OF THE PUBLIC
ATTORNEYS INDICATING "BOARD CERTIFIED," OR "SPECIALIST," OR "EXPERT" HAVE BEEN CERTIFIED BY THE FLORIDA BAR AS HAVING SPECIAL KNOWLEDGE, SKILLS, AND PROFICIENCY IN THEIR AREAS OF PRACTICE AND HAVE BEEN EVALUATED BY THE BAR AS TO THEIR CHARACTER, ETHICS, AND REPUTATION FOR PROFESSIONALISM IN THE PRACTICE OF LAW.
ALL PERSONS ARE URGED TO MAKE THEIR OWN INDEPENDENT INVESTIGATION AND EVALUATION OF ANY ATTORNEY BEING CONSIDERED.
This notice published by The Florida Bar Board of Legal Specialization and Education, Telephone 850/561-5600, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX.

RULE 10-2.1 GENERALLY
Whenever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Unlicensed Practice of Law. The unlicensed practice of law shall mean the practice of law, as prohibited by statute, court rule, and case law of the state of Florida. For purposes of this chapter:
(1) It shall not constitute the unlicensed practice of law for a nonlawyer to engage in limited oral communications to assist a person in the completion of blanks on a legal form approved by the Supreme Court of Florida. Oral communications by nonlawyers are restricted to those communications reasonably necessary to elicit factual information to complete the blanks on the form and inform the person how to file the form. Legal forms approved by the Supreme Court of Florida which may be completed as set forth herein shall only include and are limited to forms approved by the Supreme Court of Florida pursuant to rule 10-2.1(a) [formerly rule 10-1.1(b)] of the Rules Regulating The Florida Bar, the Family Law Forms contained in the Florida Family Law Rules of Procedure, and the Florida Supreme Court Approved Family Law Forms contained in the Florida Family Law Rules of Procedure.
(A) Except for forms filed by the petitioner in an action for an injunction for protection against domestic or repeat violence, the following language shall appear on any form completed by a nonlawyer and any individuals assisting in the completion of the form shall provide their name, business name, address, and telephone number on the form:
This form was completed with the assistance of:
Name of Individual
Name of Business
Address
Telephone Number
(B) Before a nonlawyer assists a person in the completion of a form, the nonlawyer shall provide the person with a copy of a disclosure which contains the following provisions:
(Name) told me that he/she is a nonlawyer and may not give legal advice, cannot tell me what my rights or remedies are, cannot tell me how to testify in court, and cannot represent me in court.

*104 Rule 10-2.1(b) of the Rules Regulating The Florida Bar defines a paralegal as a person who works under the supervision of a member of The Florida Bar and who performs specifically delegated substantive legal work for which a member of The Florida Bar is responsible. Only persons who meet the definition may call themselves paralegals. (Name) informed me that he/she is not a paralegal as defined by the rule and cannot call himself/herself a paralegal.
(Name) told me that he/she may only type the factual information provided by me in writing into the blanks on the form. (Name) may not help me fill in the form and may not complete the form for me. If using a form approved by the Supreme Court of Florida, (Name) may ask me factual questions to fill in the blanks on the form and may also tell me how to file the form.
___ I can read English
___ I cannot read English but this notice was read to me by (Name) in (Language) which I understand.
(C) A copy of the disclosure, signed by both the nonlawyer and the person, shall be given to the person to retain and the nonlawyer shall keep a copy in the person's file. The nonlawyer shall also keep copies for at least 6 years of all forms given to the person being assisted. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability.
(2) It shall constitute the unlicensed practice of law for a person who does not meet the definition of paralegal or legal assistant as set forth elsewhere in these rules to offer or provide legal services directly to the public or for a person who does not meet the definition of paralegal or legal assistant as set forth elsewhere in these rules to use the title paralegal, legal assistant, or other similar term in offering to provide or in providing legal services or legal forms preparation services directly to the public.
(3) It shall constitute the unlicensed practice of law for a lawyer admitted in a state other than Florida to advertise to provide legal services in Florida which the lawyer is not authorized to provide.
(b)-(n) [No Change]

RULE 10-3.1 GENERALLY
(a) Appointment and Terms. The standing committee shall be appointed by the court on advice of the board of governors of The Florida Bar and shall consist of 37 members, 18 of whom shall be nonlawyers. The board of governors is delegated the authority to appoint a chair and at least 1 vice-chair of the standing committee, both of whom may be nonlawyers. One-third of the members of the standing committee shall constitute a quorum. All appointments to the standing committee shall be for a term of 3 years. No member shall be appointed to more than 2 full consecutive terms. The members of the standing committee shall not be subject to removal by the court during their terms of office except for cause. Cause shall include unexcused failures to attend scheduled meetings, the number of which shall be set forth by the standing committee in an attendance policy.
(b) Recusal. No member of the standing committee shall perform any standing committee function when that member:
(1) is related by blood or marriage to the complainant or respondent;
(2) has a financial, business, property, or personal interest in the matter under consideration or with the complainant or respondent;

*105 (3) has a personal interest that could be affected by the outcome of the proceedings or that could affect the outcome; or
(4) is prejudiced or biased toward either the complainant or the respondent.
Upon notice of any of the above prohibitions the affected members should recuse themselves from further proceedings. The standing committee chair shall have the power to disqualify any member from any proceeding in which any of the above prohibitions exists and is stated of record or in writing in the file by the chair.

RULE 10-4.1 GENERALLY
(a)-(f) [No Change]
(g) Recusal. No member of a circuit committee shall perform any circuit committee function when that member:
(1) is related by blood or marriage to the complainant or respondent;
(2) has a financial, business, property, or personal interest in the matter under consideration or with the complainant or respondent;
(3) has a personal interest that could be affected by the outcome of the proceedings or that could affect the outcome; or
(4) is prejudiced or biased toward either the complainant or the respondent.
Upon notice of any of the above prohibitions the affected members should recuse themselves from further proceedings. The circuit committee chair shall have the power to disqualify any member from any proceeding in which any of the above prohibitions exists and is stated of record or in writing in the file by the chair.

RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
(a) [No Change]
(b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel.
(1) Affidavit. A respondent asserting indigency shall file with the referee a completed affidavit containing the statutory financial information required herein to be submitted to the clerk of court when determining indigent status and stating that the affidavit is signed under oath and under penalty of perjury. The affidavit must contain the following financial information and calculations as to the respondent's income:
(A) Net income. Total salary and wages, minus deductions required by law, including court-ordered support payments.
(B) Other income. Including, but not limited to, social security benefits, union funds, veterans' benefits, workers' compensation, other regular support from absent family members, public or private employee pensions, unemployment compensation, dividends, interest, rent, trusts, and gifts.
(C) Assets. Including, but not limited to, cash, savings accounts, bank accounts, stocks, bonds, certificates of deposit, equity in real estate, and equity in a boat, motor vehicle, or other tangible property.
(2) Determination. After reviewing the affidavit and questioning the respondent, the referee shall make one of the following determinations: the respondent is indigent; or the respondent is not indigent.
In making this determination, the referee shall consider the applicable statutory criteria used by the clerk of court when determining indigent status and the applicable statutory factors considered by a court when reviewing that determination.

*106 A respondent is indigent if:
(A) the income of the person is equal to or below 200 percent of the then current federal poverty guidelines prescribed for the size of the household of the respondent by the United States Department of Health and Human Services or if the person is receiving Temporary Assistance for Needy Families Cash Assistance, poverty related veterans' benefits, or Supplemental Security Income (SSI); or
(B) the person is unable to pay for the services of an attorney without substantial hardship to his or her family.
(3) Presumption. In proceedings for the determination of indigency the referee shall determine whether any of the following facts exist, and the existence of any such fact shall create a presumption that the respondent is not indigent:
(A) the respondent has been released on bail in the amount of $5,000 or more;
(B) the respondent owns, or has equity in, any intangible or tangible personal property or real property, or the expectancy of an interest in any such property; or
(C) the respondent retained private counsel immediately before or after filing the affidavit asserting indigency as required herein.
(c)-(f) [No Change]

RULE 14-2.1 GENERALLY
(a) Appointment of Members; Quorum. The board of governors shall appoint a standing committee on grievance mediation and fee arbitration comprised of:
(1) 6 lawyers who are supreme court certified mediators certified as mediators under this chapter;
(2) 3 nonlawyers who are supreme court certified mediators certified as mediators under this chapter;
(3) 6 lawyers who are certified as arbitrators under this chapter; and
(4) 3 nonlawyers who are certified as arbitrators under this chapter.
The board of governors will appoint a chair and vice-chair of the committee from the members listed above. A majority of members of the committee constitutes a quorum. The lawyer members of the committee shall have been members of The Florida Bar for at least 5 years be members of The Florida Bar in good standing.
(b)-(c) [No Change]

14-6 NATURE AND; ENFORCEMENT OF AWARD; EFFECT OF FAILURE TO PAY

RULE 14-6.1 BINDING NATURE; ENFORCEMENT; AND EFFECT OF FAILURE TO PAY AWARD
(a)-(b) [No Change]
(c) Effect of Failure to Pay Award. Failure of a member of the bar to pay an award within 90 days of the date on which the award became final, without just cause for such failure, shall result in the member being delinquent and not authorized to practice law, as provided elsewhere in these rules defining delinquent members.

RULE 17-1.2 DEFINITIONS
(a) Authorized House Counsel. An "authorized house counsel" is any person who:
(1) is a member in good standing of the entity governing the practice of law of each state (other than Florida), territory, or the District of Columbia in which the member is licensed;
(2) is not subject to an outstanding order of reprimand, censure or disbarment, permanent or temporary, for professional *107 misconduct by the bar or courts of any jurisdiction;
(3) is not subject to a disciplinary proceeding;
(4) has not been permanently denied admission to practice before the bar of any jurisdiction based upon such person's character or fitness;
(5) agrees to abide by the Rules Regulating The Florida Bar (including, without limitation, rules 6-10.1 et seq.) and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposes;
(6) is residing in Florida and exclusively employed by a business organization located in the state of Florida and is residing in Florida or relocating to the state of Florida in furtherance of such employment within 6 months of such application under this chapter and receives or shall receive compensation for activities performed for that business organization; and
(7) has complied with rule 17-1.4.
(b) [No Change]

RULE 17-1.3 ACTIVITIES
(a) [No Change]
(b) Disclosure. Authorized house counsel, in undertaking legal services permitted pursuant to subdivision 17-1.3(a)(2) or (3), shall disclose their capacity by written or printed communication that shall evidence both the name for the appropriate business organization and the title or function of the authorized house counsel and that they are not licensed to practice in the state of Florida. Such communication shall be transmitted in such manner as reasonably contemplated to create an awareness of the authorized house counsel's status with respect to the relevant activity. In any communication with individuals/organizations outside of the business organization, authorized house counsel shall disclose that they are not licensed to practice law in the state of Florida. If the communication is in writing, authorized house counsel shall disclose in writing the name of the business organization, their title or function, and that they are not licensed to practice law in the state of Florida. For example, the disclosure may state "J. Doe, XYZ Corporation, Authorized House Counsel, member. . . . (name of other state bar). . . . only or not a member of The Florida Bar." In performing activities under this subdivision, authorized house counsel shall not represent themselves to be members of The Florida Bar licensed to practice law in this state.
(c)-(d) [No Change]
NOTES
[1] Although adopt the rule requiring the Bar to assist the referee in preparing the record in Bar discipline cases, we hereby task the Bar with monitoring the preparation of these records for a year. At the end of this period, the Bar must file a report with this Court assessing the effectiveness and efficiency of this procedure.