CIKLIN, J.
Daniel Feldman (“client”) appeals the trial court’s order of dismissal and order compelling arbitration in his action against Rebecca Davis and the Davis Griffey Law Firm (“law firm”) for declaratory relief regarding his obligations to pay attorney’s fees under a contingency fee agreement. We conclude that the arbitration provision in the contingency fee agreement was limited to the determination of a “probable fee” if and when — and only if and when— the “Client decides to terminate the case after the [law firm] has provided substantial legal services.” We therefore reverse and remand to the trial court to reinstate the case and make a threshold determination as to whether these conditions were met.
The client retained the law firm to pursue a claim against Merrill Lynch for “investment losses” due to the company’s negligence or other malfeasance in not following the client’s instructions to liquidate a particular investment. The law firm initiated an arbitration proceeding with the Financial Industry Regulation Authority (“FINRA”)[1] against Merrill Lynch on behalf of the client.
The client and the law firm entered into a contingency fee agreement which provided that the client agreed to pay the law firm “30% percent of any settlement or recovery prior to deduction of $600.”[2] Paragraph 8 of the agreement contained an arbitration provision, which specified:
8. If Client decides to terminate the case after Lawyer has provided substantial legal services, Client must pay Law *1134 yer a sum equal to the probable fee, to be determined by a panel of the American Arbitration Association. Client and Lawyer will split the cost of arbitration.
Prior to the conclusion of the FINRA arbitration, the law firm withdrew from representation of the client on May 7, 2009. The client alleged that the law firm withdrew voluntarily after the client sent an email threatening to report the law firm to The Florida Bar because it had failed to communicate with him for four months. The law firm alleged that it was forced to withdraw because the client’s filing of a grievance with The Florida Bar created a conflict of interest.
After withdrawing from the case, the law firm demanded that the client pay the law firm a $180,000 contingency fee even though the FINRA claim only sought a maximum of $50,000. When the client refused, the law firm, on May 21, 2009, filed a Notice of a Charging Lien with Merrill Lynch, and then, on June 25, 2009, notified the client that it was going to compel arbitration to resolve the appropriate contingency fee.
Thereafter, the client filed the instant action for declaratory relief in the circuit court as to his obligations under the contingency fee agreement. The client specifically sought a declaration as to the issue of whether the contingency fee agreement’s arbitration provision required the parties to arbitrate their fee dispute only if the client terminated representation in the FINRA matter.
The immediate reaction of the law firm was to file a motion to dismiss the declaratory action or in the alternative a motion to stay and motion to compel arbitration.[3]
The FINRA matter was resolved via settlement on September 9, 2009, after the client had engaged new counsel. Subsequently, the trial court granted the law firm’s motion to stay and motion to compel arbitration. In its order granting the motion, the trial court ruled that the contingency fee contract was not a prohibited contract under the Rules Regulating The Florida Bar and that the issues did not fall outside the scope of arbitration. In particular, the trial court stated that the issues in dispute were “whether the attorney involuntarily withdrew due to the clients’ actions in a matter that has been terminated and the appropriate legal fee.” The trial court found that it was “obligated to order arbitration unless there is no interpretation of the arbitration clause that covers this dispute and dismissed the declaratory action.” The client now appeals the trial court’s order.
“The question of whether a disputed issue is subject to arbitration is a matter of contract interpretation, and our review is de novo.” Fla. Envtl. Servs., Inc. v. Rentoumis, 950 So.2d 466, 470 (Fla. 4th DCA 2007); see also Rodriguez v. Builders Firstsource—Florida, LLC, 26 So.3d 679, 680 (Fla. 4th DCA 2010).
“[T]here are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.” Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). The main element we address here is the second element-whether the dispute is within the scope of arbitration. The question of whether a dispute is within the *1135 scope of arbitration is a matter of contract interpretation and reviewed de novo. See O’Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So.2d 181, 185 (Fla.2006); Rentoumis, 950 So.2d at 470.
In Citigroup, Inc. v. Boles, 914 So.2d 23 (Fla. 4th DCA 2005), this court explained:
Notwithstanding that arbitration is favored in the law, construction of an arbitration clause remains subject to the contract law requirement “that the court discern the intent of the parties from the language used in their agreement.” Citigroup, Inc. v. Amodio, 894 So.2d 296, 298 (Fla. 4th DCA 2005). “[Ajrbitration is mandatory only where the subject matter of the controversy falls within what the parties have agreed will be submitted to arbitration.” Ocwen Fed. Bank FSB v. LVWD, Ltd., 766 So.2d 248, 249 (Fla. 4th DCA 2000). “[I]t is the language of the agreement that defines the scope of an arbitration agreement.” Amodio, 894 So.2d at 298.
Boles, 914 So.2d at 25.
Here, the parties chose to include a constricted and specific arbitration provision which was limited to the determination of a “probable fee.” Notably, the arbitration clause did not require the parties to arbitrate “all fee disputes.” The narrow provision that the parties chose to use in their agreement evidenced the parties’ intent to limit the scope of arbitration. See Rentoumis, 950 So.2d at 471 (holding that a narrowly worded arbitration provision that was limited to “any dispute concerning the accounting determinations used in calculating” valuations in a sale contract did not provide for the arbitrator, an accounting firm, to determine whether either party had breached the contract). Furthermore, under the tightly specific arbitration provision here, any ambiguities should be construed against the law firm as both drafter and attorney. See Arabia v. Siedlecki, 789 So.2d 380, 383 (Fla. 4th DCA 2001) (“An attorney must be clear and precise in explaining the terms of a fee agreement. To the extent the contract is unclear, the agreement should be construed against the attorney.”).
The arbitration provision at issue here was decidedly limited to the calculation of a “probable fee” if and when the client terminated representation regarding the FINRA matter after the law firm had provided substantial legal services. The arbitration clause provided for nothing less and nothing more. See Royal Prof'l Builders, Inc. v. Roggin, 853 So.2d 520, 523 (Fla. 4th DCA 2003) (“Because the arbitration provision in the agreement did not provide for the arbitration panel to decide whether the claim is arbitrable, the trial court, rather than the arbitration panel, should make that determination.”).
Under Florida law, when an attorney voluntarily withdraws from representation subject to a contingency fee agreement and the contingency has not yet occurred, the attorney forfeits all rights to compensation. Faro v. Romani, 641 So.2d 69, 71 (Fla.1994). On the other hand, “if the client’s conduct makes the attorney’s continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule of the Rules Regulating The Florida Bar, that attorney may be entitled to a fee when the contingency of an award occurs.” Id. Thus, as a first step upon reinstatement of the case, the trial court must determine if the law firm withdrew voluntarily, or if the law firm withdrew because the client’s conduct made the firm’s continued performance of the contract either legally impossible or would have caused the firm to violate *1136 an ethical rule.[4] If the trial court determines that the law firm’s withdrawal was voluntary, as the client contends, then the law firm would not be entitled to any fee as a matter of law, see Faro, 641 So.2d at 71, and there would be no “probable fee” to determine.
Contrarily, if the trial court holds that the withdrawal was necessitated by the client’s conduct, determinations are necessary prior to referring the “probable fee” dispute to arbitration. First, the trial court must ascertain the intent of the parties as to the phrase “if the client decides to terminate the case.”[5] If the trial court finds that the client terminated the contingency fee agreement, it must then determine if, prior to termination, the law firm had “provided substantial legal services.” If after making these determinations, the trial court finds that the law firm is entitled to compensation, then the case should be sent to arbitration to determine the “probable fee” under the circumstances.[6]
Finally — and perhaps most importantly — the trial court must decide if the arbitration provision in the contingency fee agreement is void and unenforceable as a matter of law. A provision in a contingency fee agreement that does not conform to the Rules Regulating The Florida Bar is not enforceable by the member of The Florida Bar that violated the rule. See Chandris, S.A. v. Yanakakis, 668 So.2d 180, 185-86 (Fla.1995) (“[W]e hold that a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees in order to be enforceable.”); Lackey v. Bridgestone/Firestone, Inc., 855 So.2d 1186, 1188 (Fla. 3d DCA 2003) (“Although the non-complying clauses on other matters are unenforceable, they do not render the agreement void. Therefore, the offending provisions may be severed allowing for enforcement of the agreement.”).
Rule 4-1.5(i) of the Rules Regulating The Florida Bar provides that an attorney shall not enter into an agreement with a client which provides for mandatory arbitration of fee disputes unless the attorney advises the client in writing that the client “should consider obtaining independent legal advice as to the advisability of entering into an agreement containing such manda *1137 tory arbitration provisions.” Otherwise, the agreement which contains the mandatory arbitration provision must contain a specific notice in bold print. While the record does not reveal whether the law firm advised the client in writing that he should consider obtaining independent legal advice regarding the mandatory arbitration provision, the written contingency fee agreement does not include the mandatory notice. Thus, if the trial court finds that the law firm did not provide the required written notice, the provision in the contingency fee agreement providing for mandatory arbitration would be in violation of Rule 4 — 1.5(i).
Rule 4 — 1.5(i) became effective on March 1, 2008. See In re Amendments to the Rules Regulating the Florida Bar, 978 So.2d 91, 92 (Fla.2007). The subject fee agreement was signed on May 6, 2008-after the rule had become effective. Thus, if the mandatory arbitration provision in the contingency fee agreement does not conform with Rule 4 — 1.5(i), the provision may be unenforceable on its face.

Reversed and remanded ivith instructions.

TAYLOR, J., and TOWBIN SINGER, MICHELE, Associate Judge, concur.

. FINRA is "the largest independent regulator for all securities firms doing business in the United States.” FINRA — About FINRA, http://www.finra.org/AboutFINRA/ (last visited Nov. 22, 2010). According to FINRA’s Customer Code of Arbitration Procedures, parties must arbitrate a dispute under the Code if requested by a customer in a dispute between a customer and a FINRA member arising in connection with the business activities of the member. See Section 12200, FIN-RA Code of Arbitration Procedure for Customer Disputes.

. The contract stipulated that the $600 was for the initial filing fee to initiate the FINRA arbitration proceedings. The filing fees for FINRA are based on the maximum amount of the claim exclusive of interest and expenses. The $600 fee was based on a maximum claim of $50,000. See Section 12900, FINRA Code of Arbitration Procedure for Customer Disputes.

. While not necessarily germane to our holding, it is at least noteworthy that on August 24, 2009, while the motion to dismiss was still pending and prior to the final resolution of the FINRA matter, the law firm moved to intervene in the FINRA arbitration claiming that it was entitled to attorneys’ fees from any final settlement.

. We note, however, that mere threats by the client to report the law firm’s lawyers to The Florida Bar for failing to communicate with the client would not normally qualify as conduct that would make the law firm’s "continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule.” See Faro, 641 So.2d at 71; DePena v. Cruz, 884 So.2d 1062, 1064 (Fla. 2d DCA 2004) (holding that there is no exception to the Faro rule for "breakdown in the attorney-client relationship”).

. The contingency fee agreement included a provision that would allow the law firm to withdraw as counsel at any time for any reason and thus terminate the contract. The agreement is silent as to whether the law firm would be entitled to compensation if it terminated the contract before the contingency occurred. The Florida Supreme Court has indicated that "any contingency fee contract which permits the attorney to withdraw from representation without fault on part of the client or other just reason, and purports to allow the attorney to collect a fee for services already rendered would be unenforceable and unethical.” The Florida Bar v. Hollander, 607 So.2d 412, 415 (Fla.1992). Thus, to be enforceable, the contingency fee agreement must be interpreted such that if the law firm’s withdrawal was voluntary, it would be entitled to no fees. See J.R.D. Mgmt. Corp. v. Dulin, 883 So.2d 314, 316 (Fla. 4th DCA 2004) (explaining that under the contract principle known as the rule of validity, "in the interpretation of contracts judges will presume that the parties intended a binding, valid agreement”).

.Even in arbitration, tire "probable fee” would be limited to "the reasonable value of [the Law Firm’s] services rendered prior to discharge, limited by the maximum contract fee.” See Rosenberg v. Levin, 409 So.2d 1016, 1021 (Fla.1982).